JESSE and others, Respondents, vs. FOUR WHEEL DRIVE AUTO COMPANY and others, Appellants.

*June 7—July 8, 1922.*

*Corporations: Defending action brought by stockholders against directors: Use of corporate funds.*

1. Although a corporation may, by unanimous action of all of its stockholders, dispose of its property as it pleases so long as it does nothing against public policy, without such unanimous

action of the stockholders the corporation is bound by its articles of incorporation, and authority must be found therein for its action, either expressly stated or properly inferred from the general powers conferred.

2. Where an action was instituted against the directors of a corporation individually by some of the minority stockholders to cancel a sale of their stock to the directors because of alleged misrepresentations, the corporation cannot provide funds for the defense of the action without the unanimous vote of all of its stockholders; and a unanimous vote at a stockholders' meeting at which not all of the stockholders were represented and the notice for which had not stated that any special business was to be transacted was insufficient to authorize such defense, the articles not authorizing the corporation to engage in litigation between contending factions of its stockholders, and such action not being germane to the business of the corporation.

APPEAL from a judgment of the circuit court for Waupaca county: BYRON B. PARK, Circuit Judge. *Affirmed.*

This is an action to compel certain directors of the defendant company to pay back to the corporation treasury corporate funds expended by them in the defense of a so-called "Mahon Suit," and to enjoin further expenditures on such account.

The defendant *Four Wheel Drive Auto Company* was incorporated in January, 1909, and began in a very small and limited way to manufacture auto trucks, auto parts, and auto accessories at Clintonville, Wisconsin. Until the month of September, 1914, the company was in straitened financial circumstances. Soon after the declaration of the World War in August, 1914, the company entered into contracts with certain of the Allied Powers for the sale of its motor trucks, and the business of the company developed rapidly and the profits were very large, aggregating in five years to about 1,000 per cent. on the original capital stock.

During the period from September 1, 1914, to January 15, 1916, certain directors purchased 121 shares of the stock of the defendant company, of the par value of

$12,000, for themselves individually, from Thomas J. Mahon and other shareholders in the company.

Shortly prior to the annual meeting on January 27, 1920, these stockholders brought suit against the individual directors, alleging that the directors conspired and combined for the purpose of obtaining their stock in the company, and that they concealed and failed to disclose important and material facts, which it was their duty to disclose, before making the purchases, thereby causing the stockholders to sell at a grossly inadequate price. They demanded a rescission of the sales and an accounting of profits. This action is referred to as the "Mahon Suit."

A general notice of such annual meeting was mailed to all stockholders. No mention was made of any unusual business to come before the meeting. At this meeting the total stock represented was 12,079½ shares out of a total of 15,000 shares, of which 4,450 were by proxy, 3,292 by the defendant's directors, and 4,337½ otherwise owned. The proxy stock together with that owned by defendants far exceeded one half of the stock represented at the meeting.

At said annual meeting the following resolution was introduced and voted on:

"*Be it resolved* that we hereby extend a vote of confidence and thanks to the directors for the faithful and efficient manner in which they have conducted the affairs of this company.

"*Be it further resolved* that whereas an action has been started against the directors personally of this company by T. J. Mahon and others, that the directors be and are hereby authorized to defray the expense of defending said action out of the funds of this company."

There was no opposition made to the resolution. The resolution was not presented until the afternoon session, and some of those present in the forenoon had gone. The complaint in the Mahon suit was not read at the meeting, and

it appears that many of those present did not comprehend the resolution.

The trial court held that the stockholders present at the annual 1920 meeting did not have the power to bind those absent and not represented by proxy, because the proposition to defray the directors' expense in defending the Mahon suit was extraordinary and outside of the usual business transacted at annual meetings of the stockholders; that before the unanimous vote of those present could become binding upon all the stockholders, notice must have been given prior to the meeting that the proposition would be presented for action; that those present at the meeting and not voting are not estopped to maintain that the action taken at the meeting was void as to themselves and as to those not present who refuse to be bound by the resolution; that the Mahon suit does not affect the corporate rights and privileges of the *Four Wheel Drive Auto Company* to any extent permitting the directors under their administrative powers, or the stockholders except by unanimous vote of each and every of them, to defray the expenses of the directors made defendants therein. The judgment restrains the *Four Wheel Drive Auto Company* from paying out funds of the company to defray the expenses of the Mahon suit, and adjudges that the defendant directors return to the corporate treasury all funds so paid out by them. The judgment also gives a lien on the amount recovered for expenses of this action, including attorneys' fees.

From the judgment in favor of the plaintiffs the *Four Wheel Drive Auto Company* and its directors appeal.

For the appellants there was a brief by *Otto L. Olen* of Clintonville, attorney, and *P. H. Martin* of Green Bay, of counsel, and oral argument by *Mr. Martin*.

*R. H. Morris* of Clintonville, attorney, and *B. R. Goggins* of Wisconsin Rapids, of counsel, for the respondents.

CROWNHART, J. This case presents a question of first impression to this court. We find no case directly in point.

The respondents cite us to *Chabot & Richard Co. v. Chabot,* 109 Me. 403, 84 Atl. 892; *Hooker, C. & M. Co. v. Hooker,* 88 Vt. 335, 92 Atl. 443; and *Pickering v. Stephenson,* L. R. 14 Eq. 322, as authorities for their position. In principle they have a bearing on this action.

This action presents a question of business morals quite as much as of law. Through corporations the major portion of the business of the country is conducted. Formerly the corporation was small, the shareholders were comparatively few, and they took an important part in the management of the corporation. Now corporations are often of tremendous proportions, with shareholders widely scattered and many of them without knowledge of the inner workings of their instruments of investment and business. Formerly the shareholders met in annual meeting and decided the plans and operations of the corporation. Now, through the agency of proxies, the officers are often in absolute control, although they may have but a small minority holding of stock. Through the proxy system a few officers may control untold wealth for weal or woe, become for all practical purposes as self-perpetuating as the corporation itself, and in some cases as soulless in spirit as the corporation is in law.

In recognition of these facts, it is of the utmost importance to the public, the shareholders, and to the corporations as well, that the principles of right and justice shall be kept to the fore in legislation and judicial interpretation concerning these great institutions.

One who invests in shares of a corporation may be thousands of miles from its head office, and may never meet or know its officers or important agents. Indeed, a majority of the shareholders may be, and often are, so situated. These, then, must place their trust in the integrity and ability of those in actual control, subject to law and regulation by executive, administrative, and judicial departments of state.

So it is we approach this case of fundamental importance

in the conduct of a state's business welfare,—as important to the corporations as entities as to the shareholders and the people as a whole. We have briefly stated the facts preceding this opinion. But it may be well to restate the main points of the case.

A small corporation in 1909 is organized, which struggles for existence with little success and dependent largely on shareholders of small means. Its business is in the auto truck industry, and dependent to a large degree on its patents protecting new ideas in the manufacturing of auto trucks and accessories. It is not prosperous; its shareholders disappointed if not discouraged. Time runs along and the great World War bursts forth in August, 1914. A sudden and unexpected demand for the corporation's products is developed and business grows apace. Success comes quickly and plentifully. Within a few short years, from 1915 to 1920, the shareholders profit to the extent of nearly 1,000 per cent. on their investment.

The directors of the corporation first became aware of the splendid prospects of the company. Here it may be stated that out of this situation grew the Mahon suit. The Mahon suit was an action brought by certain shareholders of the early and pioneer days of the corporation. They allege that the board of directors, having knowledge of the prospective profits of the corporation, conspired among themselves and an agent employed by them for the purpose of inducing such complaining shareholders to part with their stock to the conspirators at a price far below its true value. This object was accomplished, so they allege, by fraudulent concealment of the business and financial conditions of the corporation. That action was brought in January, 1920, and relief was demanded against the alleged conspirators personally. The corporation was not a party to the suit and no relief was demanded against it. The sole purpose of the Mahon suit was to obtain redress against

certain individuals who, as officers of the corporation, it was claimed, had despoiled the plaintiffs.

Shortly thereafter the annual meeting of the stockholders was held, and at that meeting, by resolution, an attempt was made to authorize the directors to defend the Mahon suit out of funds of the corporation. There were no negative votes. At the meeting the members of the board of directors so charged with conspiracy in the Mahon suit owned more than one half of the total shares of the corporation. There were nearly 3,000 shares not represented at the meeting.

Acting on the authority of said resolution the directors employed counsel to defend the Mahon suit, paid out money from corporate funds therefor, and incurred other liabilities against the corporation, and threatened to continue so to do.

It is the contention of the defendants that the Mahon action was calculated to injure the business of the corporation, and that it was of corporate concern so as to justify the payment of the expense of the defense to the action.

It is unnecessary to a decision in this case to consider the merits of the Mahon case. Suffice to say the action is pending between former stockholders of a small number of shares and the directors of the corporation, who own a large number. The corporation intervenes in that suit to carry on the defense of its officers, charged with wrongs against such minority shareholders, whereby they parted with valuable shares at a fraction of their true worth. In this action certain present shareholders protest the right of the corporation to side with its officers at the expense of all the shareholders. This is the nub of the present case. We have thus restated the facts, for it seems that when the matter is viewed in its proper perspective the case assumes an easy solution.

It may be said in a general way that the stockholders of

a corporation may by unanimous action of all its stockholders dispose of its property as it pleases, so long as it does nothing against public policy. But, aside from such unanimous action of all the stockholders, the corporation is bound by its articles of incorporation, and therein must be found authority for its action, either expressly stated or properly inferred from the general powers conferred.) Here it is not claimed that the corporation had any special power, by virtue of its articles of incorporation, to take part in litigation between contending factions of its stockholders not affecting the corporation rights. The claim is that the corporation is indirectly affected by the reflection on the honesty of its officers so sued. But that depends on the outcome of their suit. If the officers are vindicated in the suit, then the corporation does not suffer. If they are convicted, then it is but right that the stockholders shall know of their perfidy, that they may be discharged for unfaithfulness to their trust. Here the corporation anticipates the facts and puts all its great power, including the alleged financial interests of the plaintiffs in the Mahon suit, into the legal battle against the early holders of a small amount of stock. The plaintiffs in the Mahon suit, if they have a just claim, are forced in part to assist the tortfeasant directors in their defense. The forces were already uneven. The plaintiffs in the Mahon suit were fighting before the breastworks; the directors from behind the breastworks. The plaintiffs there had to ferret out information in possession of the defendants. Plaintiffs had lost the profits on their former holdings; the defendants enjoyed the profits. The mere statement of the situation is enough. From no standpoint, legal, equitable, or moral, can less than all the shareholders authorize the use of the funds of the corporation for purposes not germane to the business of the corporation. Much less can it throw its power and money behind a lawsuit in which it has no interest. And if the corporation cannot do these things, it most

certainly cannot spend the shareholders' interest in corporate funds to fight those claiming an interest in such funds through an action to recover stock illegally. secured from them.

What we here hold logically follows from what was said by Mr. Justice OWEN in *Goodwin v. von Cotzhausen,* 171 Wis. 351, 177 N. W. 618, respecting the development of the powers of a court of equity in protecting minority stockholders.

*By the Court.*—The judgment of the circuit court is affirmed.