W.H. PUGH COAL COMPANY, Plaintiff-Appellant,

v.

STATE of Wisconsin and County of Racine,
Defendants-Respondents.†

Court of Appeals

*No. 81-021. Submitted on briefs August 31, 1981.—
Decided October 14, 1981.*
(Also reported in 312 N.W.2d 856.)

† Petition to review denied.

For the plaintiff-appellant the cause was submitted on the brief of *Victor M. Harding* of *Whyte & Hirschboeck, S.C.* of Milwaukee.

For the defendants-respondents the cause was submitted on the brief of *Bronson C. La Follette,* attorney general; *Thomas L. Dosch,* assistant attorney general, and *William F. Bock,* Racine county corporation counsel.

Before Voss, P.J., Brown and Scott, JJ.

SCOTT, J.   This is a civil action brought to quiet title to a section of land along the Lake Michigan shore known as the Racine Coast Guard Station property. The trial court decided that the property belonged to the State because the State holds the lake bed in public trust. We hold that this land is an accretion to the property of the lakeshore landowner, and we reverse.

The United States Government erected a lighthouse on the bed of Lake Michigan around 1866. The lighthouse was located to the east of the lakeshore property owned by William H. Lathrop, the predecessor in interest of the plaintiff W.H. Pugh Coal Company. Around 1900, the United States Government planned to build a livesaving station on the lake bed between the lighthouse and the existing shore. The government negotiated with Lathrop and obtained an easement over his land for access to the lifesaving station. Lathrop granted the easement by deed, which only conveyed to the government the right to use the lands and accretions thereto for purposes

of access to the lifesaving station and to facilitate its construction. The deed provided that Lathrop and his successors in title would retain ownership in fee simple and that if the government ever abandoned the lifesaving station, then all of its right, title and interest to the lands would revert to the grantor or his successors in title.

Over the years, the land around the lighthouse and the lifesaving station had been filled in so that the land under all of the buildings now forms a continuous extension of the plaintiff's property to the eastern boundaries of the government buildings. The eastern boundary of this property was designated as the established shoreline by a City of Racine ordinance adopted on November 13, 1962.

In 1972, Pugh brought an action against the United States in the Circuit Court for Racine County to establish his title to the Coast Guard Station property. The United States demurred on jurisdictional grounds, and the demurrer was sustained. Pugh then commenced a similar action in the United States District Court for the Eastern District of Wisconsin. The State of Wisconsin intervened on the ground that it owned the Coast Guard Station property because the station was located over what was once the bed of Lake Michigan. The United States quit-claimed its interest in the property to the State of Wisconsin on May 12, 1976. The federal court then ruled on September 16, 1976 that the property reverted to Pugh as the successor to the grantor's interest because the United States had no further interest in the property under the deed of 1900. By the same ruling, the federal court dismissed the State's claim without prejudice. On September 27, 1976, Racine County leased the premises from the State for the operation of a county water safety patrol.

Pugh then commenced this action in the Circuit Court for Racine County on September 30, 1976. The State of Wisconsin and the City and County of Racine were

named defendants. The City was dismissed when it stipulated that it had no interest in the property. The interest of the County was based on its lease agreement with the State. Both Pugh and the State moved for summary judgment, and the trial court, the Honorable Andrew W. Parnell presiding, ruled in favor of Pugh. Judge Parnell based his ruling on the legal doctrine that land accretions inure to the benefit of the riparian property owner where artificial accretions are made by persons other than the benefited owner. Judgment was entered on October 15, 1977, and the State appealed to this court. We reversed and remanded to the trial court for further proceedings because a material issue of fact, namely, the identity of the party who performed the filling, was in dispute.

On remand, the case was tried to the court, the Honorable John C. Ahlgrimm presiding as substituted judge, on July 1, 1980. The trial court held that the identity of the person who filled in the area could not be determined from the evidence. The court found, however, that Pugh used the filled area for business purposes for many years. According to the trial court, a riparian owner cannot acquire title to land formed by artificial accretion. Moreover, the court concluded that the State's title to the lake bed which had been filled in could not be relinquished by the State. This title was found to be constitutionally protected by the public trust doctrine. Pugh's complaint was dismissed, and judgment was entered on December 29, 1980.

On appeal, Pugh argues that he is entitled to the accretion on his land under the terms of the 1900 deed because the United States abandoned the property. He contends that his rights as riparian landowner are not diminished even though the accretion occurred by artificial means.

The Wisconsin Supreme Court has recognized that a riparian owner can obtain right and title to land formed

by artificial accretion. In *De Simone v. Kramer,* 77 Wis. 2d 188, 252 N.W.2d 653 (1977), a buyer of real estate along the Sturgeon Bay shoreline sued his seller for reformation of his deed on grounds that the deed did not accurately describe the property conveyed. The shoreline was modified when the Army Corps of Engineers dredged the bay for a ship channel and landfill deposits along the shore resulted. The sellers argued that the filled property was not theirs to convey, but the supreme court disagreed. The court noted that riparian owners obtain rights to the soil formed by accretions, and their rights to the shore are exclusive as to all the world, excepting only where those rights conflict with the rights of the public for navigation purposes. *Id.* at 197, 252 N.W.2d at 657. The court distinguished *Menomonee River Lumber Co. v. Seidl,* 149 Wis. 316, 135 N.W. 854 (1912), where an owner was not allowed to take title to land accretion because the owner himself had induced the formation by dredging. According to the court in *De Simone,* the causing or hastening of gradual deposits by artificial construction, made by persons other than the benefited and claiming owner, does not prevent the doctrine of accretion from applying. 77 Wis. 2d at 199, 252 N.W.2d at 657–58.

In the present case, we are bound by the trial court's conclusion that the State failed to prove that Pugh filled in the coast guard site. A quiet title action under the Wisconsin Statutes is an action in equity. *Siedschlag v. Griffin,* 132 Wis. 106, 111, 112 N.W. 18, 20 (1907). The test on review in equity cases is whether the findings are contrary to the great weight and clear preponderance of the evidence. *First National Bank of Kenosha v. Scalzo,* 70 Wis. 2d 691, 700, 235 N.W.2d 472, 477 (1975).

Because the State did not prove that Pugh himself created the landfill, Pugh is entitled to the land as an accretion upon his property. According to the holding

in *De Simone,* Pugh retains his rights to the land even though the accretion was artificial.

The State contends it has absolute right to the lake bed. It relies on *State ex rel. Thomas Furnace Co. v. Milwaukee,* 156 Wis. 549, 146 N.W. 775 (1914), to support its claim that the State holds the lake bed in public trust so that it cannot constitutionally convey the lake bed. In addition, the State argues that it succeeded to the federal government's role in holding this property in the public interest.

The right of a riparian owner to accretions upon his land is absolute as against all the world except to the public's rights of navigation. *Heise v. Village of Pewaukee,* 92 Wis. 2d 333, 343–44, 285 N.W.2d 859, 864 (1979), *cert. denied,* 449 U.S. 992 (1980). In order for the State to take the property of a private landowner, including riparian rights, it must exercise its right of eminent domain by condemnation procedure in accordance with ch. 32, Stats. The property of a private citizen cannot be taken for any other than a public use and only upon condition that full compensation is made. *Whiting v. Sheboygan & Fond du Lac Railroad Co.,* 25 Wis. 167, 171–72 (1870).

Our supreme court recognized that land formed by artificial accretions does not belong to the State unless the State claims the land by an exercise of its police power. In *De Simone,* 77 Wis. 2d 188, 252 N.W.2d 653 (1977), the court stated:

The desirability of protecting a property owner's riparian right of access is not lessened when a government entity causes the made land through artificial means in pursuit of a navigation project, at least when the government does not lay claim to the made land for purposes of navigation, fisheries or other exercises of the police power.

*Id.* at 199, 252 N.W.2d at 657.

Moreover, the *De Simone* court cited with approval the case of *Michaelson v. Silver Beach Improvement Assn.*, 342 Mass. 251, 173 N.E.2d 273, 91 A.L.R.2d 846 (1961). In that case, landowners sought to enjoin public use of a beach created when the state dredged for a harbor improvement project. The court upheld the common-law right of a landowner to natural accretions. According to the *Michaelson* court, the state could not create surface land on the shoreline with title to the state without providing a remedy in damages to the landowner unless there was a substantial relationship between the state's project and the public powers over navigation and fisheries. 342 Mass. at 257, 173 N.E.2d at 277, 91 A.L.R. 2d at 854.

In the present case, the fact that the State holds the lake bed in public trust is not sufficient to grant title to accretions on a riparian owner's land without just compensation. The State's reliance on *Thomas Furnace Co.* is misplaced. In that case, there was a condemnation of property for public use, and the dispute involved issues concerning the respective rights of the city, state and federal governments over the condemned land.

We hold that Pugh is entitled to the property, according to the land description accepted by the trial court, because there was no showing that Pugh caused the accretion himself.

*By the Court.*—Judgment reversed.