Erica P. JOHN, as an officer and director of De Rance, Inc., Wisconsin non-stock, non-profit corporation, and Donald A. Gallagher, as an officer, director and trustee of De Rance, Inc., Plaintiffs-Respondents,

v.

Harry G. JOHN, as a director and trustee of De Rance, Inc., Defendant-Appellant.†

Court of Appeals

*No. 88-1507. Submitted on briefs September 5, 1989.—Decided November 24, 1989.*

(Also reported in 450 N.W.2d 795.)

†Petition to review denied.

344

For the defendant-appellant the cause was submitted on the briefs of *Pappas & Stewart,* by *David C. Pappas,* of Madison.

For the plaintiffs-respondents the cause was submitted on the briefs of *O'Neil, Cannon & Hollman, S.C.,* of Milwaukee, and *Cannon & Dunphy, S.C.,* of Milwaukee, by *Thomas G. Cannon.*

Before Sullivan, Fine, and Brown, JJ.

SULLIVAN, J. Harry G. John appeals from a judgment permanently enjoining him from serving as a director and trustee of De Rance, Inc. and ordering him to pay equitable disgorgement of $1,171,418 plus interest

347

to De Rance. John raises eleven issues on appeal. He argues that:

(1) the trial court lacked jurisdiction to remove him as a director and trustee of De Rance because De Rance is a religious corporation and that statutes authorizing removal of corporate directors and trustees do not grant jurisdiction in this case;

(2) the trial court had no other jurisdictional basis to command his removal;

(3) the trial court's exercise of jurisdiction violated his rights to religious freedom under the state and federal constitutions;

(4) the trial court abused its discretion by failing to consider less restrictive sanctions than his removal;

(5) the trial court's findings of gross misconduct were clearly erroneous and do not support the sanction of his removal;

(6) the trial court's findings that John received notice of the action and that the plaintiffs, Erica P. John and David A. Gallagher, had authority to commence this action were clearly erroneous;

(7) the trial court erred under statutory and common law in denying him indemnification for the costs of his defense;

(8) the trial court abused its discretion in permitting Gallagher and Mrs. John to finance their litigation expenses with De Rance funds while not extending the same privilege to Mr. John;

(9) the trial court abused its discretion in granting Gallagher and Mrs. John leave to amend their complaint;

(10) the trial court violated John's due process and equal protection rights by denying him a jury trial; and,

(11) the trial court violated John's federal due process rights by granting equitable disgorgement, a

remedy that the plaintiffs did not request until several weeks after conclusion of the trial.

We conclude that the trial court had jurisdiction over this matter and that its exercise of jurisdiction did not violate John's constitutional rights to religious freedom; that the trial court properly determined that John's conduct constituted "gross misconduct" and did not abuse its discretion in imposing sanctions; and, that John was deprived of no other substantial right resulting in prejudicial error. Therefore, we affirm the decision of the trial court.

After a lengthy trial, the trial court filed comprehensive findings of fact. They number 203 and cover 93 pages of a record that approximates 23,000 pages. For the most part, they are undisputed on appeal and trace John's activities as treasurer, chief financial officer, director, and trustee for De Rance and its investment activities. The court found that John had committed gross misconduct and breached his fiduciary duties as a director and trustee of De Rance. In specific findings of fact too comprehensive to fully detail in the context of this opinion, the trial court determined that John had engaged in a pervasive pattern of abuse of office including securities fraud, tax fraud, perjury, self-dealing, conflicts of interest, corporate fraud, lying to the board of directors, breach of fiduciary duties, deception and disobedience of the board of directors, waste, and mismanagement of De Rance and its investments in Santa Fe Communications, Inc. (Santa Fe) and HBI Acquisition Corp. (HBIAC) including extensive investments in fraudulent deep sea treasure hunts.

De Rance, a non-stock corporation organized under Chapter 181, Stats., was established in 1946. John funded it in the early 1950's by three deeds of gift valued at $14 million, consisting of his inherited stock in the

Miller Brewing Company. De Rance was organized to provide financial support for religious, charitable and educational causes. Until 1970, De Rance grants were paid from Miller stock dividends. In 1970 De Rance sold its 47% equity position in Miller to the Philip Morris Company for $97 million. From 1970 to 1984, grants totaled $125 million and were made principally, but not exclusively, to Roman Catholic charities and institutions. The market value of De Rance's assets was $188 million in 1983.

From its creation until September of 1982, De Rance operated exclusively as a grant-making organization. In September of 1982, John incorporated Santa Fe as a non-profit, non-stock corporation under Chapter 181, Stats. It was organized for the purpose of producing and broadcasting radio, television, and cinema programs and publishing printed matter of a religious and educational nature consistent with the teachings of the Holy See. Through Santa Fe, John hoped to establish a national television and satellite communications empire. To that end, John caused De Rance, Santa Fe, and HBIAC to acquire substantial interests in television and radio stations and to establish several production facilities with all funds provided by De Rance. The trial court found that John's mismanagement caused De Rance to accumulate more than $86 million in unnecessary and wasteful expenses related to these investments.

Until October of 1984, John was the sole donor, trustee, chairman of the board of directors, president and chief executive officer, and treasurer and chief financial officer of De Rance. The trial court characterized John as De Rance's "dominant authority":

> Defendant was the dominant authority in controlling the course of events at De Rance, Santa Fe, and HBIAC by virtue of (a) his original contributions

350

of Miller Brewery Co. stock to De Rance, (b) his holding the key executive and financial positions in all three entities, (c) his domineering personality, and (d) his secretive and manipulative manner of operating these entities in such a way as to exclude all but himself from making the critical decisions, and the acquiescing personalities of both plaintiffs.

As of October, 1984, Erica John was an officer and member of the board of directors of De Rance, and Donald Gallagher was an officer, director and trustee of De Rance.

The procedural history of the case is succinctly set forth in the trial court's findings of fact:

On October 5, 1984, defendant was suspended as an officer, director and trustee of De Rance by an ex-parte order of this Court upon a showing of an appearance of abuse of his trust pursuant to Section 776.32(3), Wis. Stats. On October 15, 1984, defendant was removed from his positions as president and treasurer of De Rance by action of the board of directors of De Rance. This removal was ratified and confirmed at a special meeting of the board of directors of De Rance on January 2, 1985. Plaintiffs used proper corporate procedures to remove defendant from his positions as president and treasurer. Defendant's suspension as a director and trustee of De Rance was continued through the trial by virtue of a stipulation for the entry of a preliminary injunction in this action which was signed by the Court on February 11, 1985. Defendant was permanently removed from his positions as trustee and director of De Rance by decision of this court on August 21, 1986.

Judgment was entered on December 21, 1987.

We will set forth additional facts as needed, and, at the risk of being mistaken for a member of the species *Ursus Saltandus,* we will principally address John's eleven issues *seriatim. See State v. Waste Management of Wisconsin, Inc.,* 81 Wis. 2d 555, 564, 261 N.W.2d 147, 151 (1978).

## JURISDICTIONAL ISSUES

The trial court concluded that its exercise of jurisdiction in this case was proper. It stated: "The Court possesses inherent equity jurisdiction and statutory jurisdiction pursuant to section 776.32(4) of the Wisconsin Statutes over the parties and subject matter of this action." However, John contends that De Rance is a religious corporation, free of the requirements and constraints that apply to commercial corporations, and that it is not subject to state subject-matter civil jurisdiction.

John contends that sec. 776.32, Stats., does not vest the trial court with jurisdiction over him, and, alternatively, that the court has no inherent equitable power in this matter.[1] Subsections (3) and (4) of that statute vest the court with authority to suspend corporate officers and directors on appearance of abuse of trust and to remove them "upon proof or conviction of gross misconduct." John relies on sec. 776.46, Stats., which expressly excludes "religious corporations" from the provisions of

---

[1]Section 776.32(3) and (4), Stats., provides:

**776.32 Jurisdiction.** Courts shall have jurisdiction over directors, managers, trustees and other officers of corporations:

. . ..

(3) To suspend any director, trustee or officer from exercising the office on appearance of abuse of his or her trust.

(4) To remove any such director, trustee or officer from the office upon proof or conviction of gross misconduct.

Chapter 776, Stats.[2] He argues that De Rance qualifies as a "religious corporation" under either Chapter 187, Stats., or sec. 182.030, Stats.[3]

An action under sec. 776.32 is essentially equitable in nature. *McGivern v. Amasa Lumber Co.,* 77 Wis. 2d 241, 257, 252 N.W.2d 371, 378 (1977) (discussing the predecessor to sec. 776.32). The standard of review in equity cases is whether the findings of the trial court are against the great weight and clear preponderance of the evidence. *W.H. Pugh Coal Co. v. State,* 105 Wis. 2d 123, 127, 312 N.W.2d 856, 858 (Ct. App. 1981).[4]

The trial court found:

> De Rance is a non-profit, non-stock corporation organized under the Wisconsin Non-Stock Corporation Act, Wis. Stats. Ch. 181 . . ..
>
> De Rance is not a religious corporation within the meaning of sections 182.030, 776.46, or Chapter 187

[2]Section 776.46, Stats., provides:

**776.46 What corporations not affected.** The provisions of this chapter shall not extend to any incorporated library or lyceum society, to any religious corporation or any incorporated academy or select school, nor to the proprietors of any burying ground incorporated under the laws of this state.

[3]Chapter 187, Stats., is entitled "Religious Societies." Section 182.030, Stats., provides:

**182.030 Corporations having church affiliations.** Whenever any corporation shall be formed for the benefit of, or be in any manner connected with, any church or religious denomination or society, its articles of organization may provide that it shall be under the supervision and control of such church, denomination or society; and that the officers or trustees be communicants thereof.

[4]This standard is essentially the same as the "clearly erroneous" standard set forth in sec. 805.17(2), Stats. *Noll v. Dimiceli's, Inc.,* 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983).

of the Wisconsin Statutes. Rather, it is a charitable corporation which has made a wide variety of grants to many non-Catholic or nondenominational organizations.

This finding has ample evidentiary support. In De Rance's Articles of Incorporation, filed with the Secretary of State on October 18, 1946, the incorporators declared their intention to form a "corporation." The purposes of the corporation, recited in Article I, include the acquisition of funds for "religious, charitable and educational purposes." The declared charitable objectives include not only gifts to religious institutions, but to the care of the sick, aged, and helpless. Articles of Amendment dated August 1, 1960 amended Article I by specifying, *inter alia,* that De Rance's charitable endeavors need not be confined to institutions or agencies of the Roman Catholic Church. The amendment also deleted a provision which required one-half of the advisory board to be members of the clergy. A further amendment, dated September 23, 1980, prefatorily stated: "'The Articles of Amendment of the Articles of Incorporation of De Rance, Inc., a Wisconsin corporation *subject to the provisions of Chapter 181 of the Wisconsin Statutes* . . .." [Emphasis added.] Thus, De Rance's Articles of Incorporation support the trial court's finding that De Rance is a Chapter 181 corporation.

In addition, De Rance's grant activities demonstrate that its giving is not limited to the Roman Catholic Church. In recent years, grants exceeding $5 million were made to secular or non-Roman Catholic charities including the United Way, Concordia College, the Medical College of Wisconsin, the Easter Seal Society, and many others.

The trial court's finding that De Rance is not a Chapter 187 religious society is not clearly erroneous. Reference to sec. 187.12, Stats., dispels any notion that De Rance was incorporated as a religious society. *See generally* sec. 187.12, Stats. (governing incorporation of Roman Catholic congregations). De Rance is subject to no diocesan authority whatsoever. John's reliance on sec. 182.030, Stats., is also inappropriate. De Rance's Articles of Incorporation and Amendments nowhere subject it to the supervision or control of any religious society, nor do they indicate that it was formed for the benefit of any religious society.[5]

██ Because the trial court's finding that De Rance is a charitable corporation under Chapter 181, Stats., is not clearly erroneous, we conclude that the trial court had jurisdiction pursuant to sec. 776.32(4), Stats., to remove John for gross misconduct. It is unnecessary for us to determine whether the trial court had superintending equity jurisdiction to effect John's removal. *See Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663, 665 (1938).[6]

## JOHN'S FREE EXERCISE OF RELIGION

John argues that the injunction removing him as a director and trustee of De Rance interfered with his

---

[5] *See,* sec. 182.030, Stats., *supra* note 3.

[6] John's reliance on *Green Scapular Crusade, Inc. v. Town of Palmyra,* 118 Wis. 2d 135, 345 N.W.2d 523 (Ct. App. 1984), is misplaced. The issue before the court in that case was whether a corporation organized under Chapter 181 was a "religious association" entitled to a property tax exemption under sec. 70.11(4), Stats. Although we determined that a "religious corporation" could be organized under Chapter 181, our decision was not made in the context of sec. 776.46, nor did it involve the critical jurisdictional issues presented by the case at hand.

constitutional right to free exercise of religion.[7] He argues that no overriding state interest required his removal and that the trial court abused its discretion by failing to consider sanctions less drastic than removal.

This issue requires us to apply the U.S. and Wisconsin constitutions to a group of undisputed facts. It is a question of constitutional interpretation which we decide *de novo. See State v. Beno,* 116 Wis. 2d 122, 136–37, 341 N.W.2d 668, 674 (1984).

Essentially, John claims that the trial court orders violated his constitutional right to freely exercise his religion, Roman Catholicism. Governmental action may be unconstitutional if it imposes a burden on the free exercise of religion. *State v. Horn,* 126 Wis. 2d 447, 454, 377 N.W.2d 176, 179 (Ct. App. 1985), *aff'd,* 139 Wis. 2d 473, 407 N.W.2d 854 (1987). However, we reject this argument because the judgment only brought to conclusion John's relationship with De Rance.

---

[7]Wis. Const. art. I, sec. 18 provides:

**Freedom of worship; liberty of conscience; state religion; public funds.** SECTION 18. The right of every person to worship Almighty God according to the dictates of conscience shall never be infringed; nor shall any person be compelled to attend, erect or support any place of worship, or to maintain any ministry, without consent; nor shall any control of, or interference with, the rights of conscience be permitted, or any preference be given by law to any religious establishments or modes of worship; nor shall any money be drawn from the treasury for the benefit of religious societies, or religious or theological seminaries.

U.S. Const. amend. I provides in part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . .."

The trial court's injunction and other orders did not impose any burden on John's free exercise of religion. John, in his appellate brief, frequently and emphatically pronounced his Roman Catholic religious preference. However, he fails to identify how the court's orders hamper his practice of religion. His fall from grace as an officer, director, and trustee of De Rance does not affect his ability to practice Roman Catholicism. He can be as faithful to the church with or without these offices. John points to no cardinal principle of Roman Catholicism that is affected by the judgment. The orders of the trial court are neither an affront to John's beliefs nor an assault upon his practice of those beliefs.

## JOHN'S REMOVAL: GROSS MISCONDUCT

John argues that the trial court's finding of his gross misconduct is clearly erroneous because: (1) his business judgment, however imprudent, was essentially honest; and (2) Erica John and Gallagher waived any objection to his transactions because they acquiesced to them.

Section 776.32(4), Stats., vested the trial court with the power to remove a director or officer upon proof of gross misconduct. However, the term "gross misconduct" is not defined in the statutes. The Wisconsin Supreme Court has declared that as a well-established rule courts will not interfere in corporate affairs in the absence of allegations clearly disclosing abuse of power by the corporate officers, bad faith, willful abuse of discretion, or positive fraud. *Thauer v. Gaebler,* 202 Wis. 296, 301–02, 232 N.W.2d 561, 563 (1930) (shareholder suit to recover gratuity paid to corporate officer). We conclude that the term "gross misconduct" found in sec.

357

776.32(4), Stats., embraces the concepts of an officer's abuse of power, bad faith, willful abuse of discretion, or positive fraud. Gross misconduct contains the element of intentional wrongdoing or failure to act consistently with the officer's duty to the corporation. In this case, the findings of the trial court establish John's abuse of power, and, in some instances, his practice of positive fraud upon De Rance. Thus, his conduct may not be excused under the guise of "honest business judgment."[8]

John opened his personal account at the securities brokerage firm of Morgan, Olmstead, Kennedy and Gardner (MOKG) on June 7, 1977, the day before De Rance opened its account there. John's self-dealing included direct stock sales from his account to De Rance. In twenty-three transactions, the total sales equalled $802,875.53. The securities were placed in a De Rance account called "Fund E" and netted John a gain of $95,643. The Fund E portfolio consisted of thinly traded, nonliquid securities. The direct sale permitted John to cash out in a falling market.

In addition, John engaged in securities frauds called "market manipulation" and "front running." The parallel accounts at MOKG permitted him to take advantage

---

[8]The principle behind the "business judgment rule" was discussed by Justice Wickhem in *Steven v. Hale-Haas Corp.,* 249 Wis. 205, 23 N.W.2d 260 (1946):

Assuming that the evidence and findings do not disclose situations outlined in the preceding two paragraphs (that is a corrupt bargain or corporate action so patently harmful to the corporation as to indicate an abuse of discretion), this court will not substitute its judgment for that of the board of directors and assume to appraise the wisdom of any corporate action. The business of a corporation is committed to its officers and directors, and if their actions are consistent with the exercise of honest discretion, the management of the corporation cannot be assumed by the court.

*Id.* at 221, 23 N.W.2d at 628.

of De Rance's purchasing power. Frequently John's securities purchases were followed by substantial purchases of the same securities by De Rance. This elevated the market price of those securities, allowing John to liquidate his position at a substantial gain. Called "front running," this type of securities fraud invariably resulted in gains to John substantially greater than De Rance's. John's relationship with the brokers and command of the parallel accounts were not divulged to Erica John and Gallagher.

Other trial court findings detailed false expense and travel vouchers presented to and paid by De Rance. The court also found that John had engaged in tax misrepresentation and invested substantial De Rance funds in fraudulent deep sea treasure expeditions. The findings establish breaches of John's fiduciary duty of care and loyalty and conflicts of interest. For the most part, these instances of gross misconduct were not gainsaid at trial. We affirm the trial court's finding of gross misconduct.

As a defense, John argues that Erica John and Gallagher acquiesced in these activities. The trial court rejected this argument by its finding, based on credible evidence not contrary to the great weight and clear preponderance of the evidence, that Gallagher and Erica John did not have knowledge of John's self-dealing, securities infractions, tax misrepresentations, voucher misstatements and other breaches of duty, much less acquiesce in or authorize them. Upon certain occasions they authorized John to proceed, but only after John misadvised or withheld information from them.

John complains that the trial court erred by not at least allowing him to continue as a De Rance trustee. John, however, violated his superintending duty as trus-

tee when he tolerated his shortcomings as a director. The trial court did not abuse its discretion in removing John from both of his fiduciary positions when his gross misconduct in one position implicated the other. *See Hanson & Assoc. v. Farmers Coop Creamery Co.,* 403 F.2d 65, 70 (8th Cir. 1968) (evidence of gross mismanagement justifies removal as director and voting trustee; citing Minn. Stat. Ann. sec. 316.03(3) and (4)).

## NOTICE OF COMMENCEMENT OF THE ACTION; THE STIPULATION

■■■

John argues that Gallagher and Erica John lacked corporate authorization to bring and maintain this action. He bases this argument on section 181.20(1), Stats., which prescribes a minimum of three directors in a corporation.[9] However, no corporate authorization was required. Although this action was brought by the plaintiffs in their capacities as representatives of De Rance, it was not brought by De Rance, and, therefore, does not constitute a corporate act.

John cites no authority for the proposition that he should have received previous notice of any meeting to authorize suit for his removal. We decline to review the legal argument proffered by John because he cites no authority to support it. Rule 809.19(1)(e), Stats.; *see Racine Steel Castings v. Hardy,* 139 Wis. 2d 232, 240,

---

[9]Section 181.20(1), Stats., provides:

**181.20 Number and election of directors. (1)** The number of directors of a corporation shall not be less than 3. Subject to such limitation, the number of directors shall be fixed by or in the manner provided in the articles of incorporation, or, if the articles of incorporation so provide, by or in the manner provided in the bylaws.

407 N.W.2d 299, 302 (Ct. App. 1987), *rev'd on other grounds,* 144 Wis. 2d 553, 426 N.W.2d 33 (1988).

John also argues that his attorneys lacked authority to enter a stipulation for entry of the February 11, 1985 injunction and that the trial court abused its discretion in refusing to grant him relief. Again John has supplied no legal authority for his position and accordingly we decline to address it. *Id.* Rule 809.19(1)(e), Stats., requires that the argument on each issue on appeal contain citations to authority. In addition, John has not demonstrated how he may have been prejudiced by the stipulation. *See Jax v. Jax,* 73 Wis. 2d 572, 582, 243 N.W.2d 831, 837 (1976). Therefore, we find no error.

## INDEMNIFICATION—CORPORATE NEUTRALITY

The trial court approved a $25,000 loan to fund John's defense of this action. He contends that De Rance should have fully indemnified him for this expense. He argues that the court violated the principle of corporate neutrality by authorizing huge outlays to launch and support this action while simultaneously denying him all but a relatively small loan for his defense.

In its analysis of this issue, the trial court applied section 181.045, Stats. (1983-84).[10] Again, the facts relating to the indemnification and neutrality issues are

---

[10]Sections 181.045(1) and (3), Stats. (1983-84), provide in part:

**181.045 Indemnification of officers, directors, employes and agents. (1)** A corporation may indemnify any person who was or is a party . . . to any suit threatened, pending or completed action, or proceeding, whether civil, criminal, administrative or investigative . . . if the person acted in good faith and in a manner he or she

either undisputed or have been determined by the trial court and are not contrary to the great weight and clear preponderance of the credible evidence. Application of the statute and related case law to these facts presents a legal issue which we decide without deference to the conclusions of the trial court. *Tenpas v. Dept. of Natural Resources,* 148 Wis. 2d 579, 582, 436 N.W.2d 297, 298 (1989).

John's claim for indemnification is defeated by section 181.045(1) and (3), Stats. (1983–84). As the trial court determined, John did not exercise good faith during the period in question and has not been successful on the merits. John not only failed in the defense of what he considered to be his interest in De Rance, but his activities were inimical to De Rance's interest. He was entitled to no advance for defense costs, and, once losing, is entitled to no indemnification.[11]

Case law also supports this result. *Jesse v. Four Wheel Drive Auto Co.,* 177 Wis. 627, 189 N.W. 276 (1922), was a suit to compel corporate directors to reim-

---

reasonably believed to be in or not opposed to the best interests of the corporation . . ..

. . .

(3) To the extent that a director, officer, employe or agent of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in sub. (1) or (2), or in defense of any claim, issue or matter therein, he shall be indemnified against expenses, including attorneys' fees, actually and reasonably incurred by him in connection therewith.

[11]*See* Note, *Corporations: Directors: Indemnification for Litigation Expenses,* 37 Cornell L. Q. 78, 79–80 (1951), "American jurisdictions universally hold that directors who are unsuccessful in their defense to civil actions based upon their misconduct are not entitled to reimbursement from the corporation for litigation expenses."

362

burse the company for funds used to defend a minority shareholder suit against the directors and to enjoin further distributions. The supreme court affirmed the trial court's judgment ordering reimbursement and restraining future expenditures. The supreme court reasoned that the defense was to protect the director's rights and did not pertain to any interest of the company, and, therefore, the distributions were invalid. Addressing the shareholders' resolution which authorized the distributions the supreme court said: "From no standpoint, legal, equitable, or moral, can less than all the shareholders authorize the use of the funds of the corporation for purposes not germane to the business of the corporation." *Id.* at 634, 148 N.W. at 279.

John also relies on De Rance's By-Law Seventeen[12] which provides, *inter alia,* that De Rance will indemnify a party to a civil suit by reason of the fact that he is a De Rance officer or director. Such officer or director may recover expenses, including attorney fees, "actually and reasonably incurred in connection with such action . . . to the full extent *permitted under the law* . . .." [Emphasis added.] Because secs. 181.045(1) and (3), Stats. (1983–84), conditioned indemnification upon an individual's good faith actions, and upon his or her success on the merits, John does not qualify as *"permitted under the law."* Therefore, the by-law does not provide John with a right to indemnification.

In addition, De Rance had no duty to maintain a stance of corporate neutrality in this litigation. This suit was not purposed to protect or establish any personal interest of the plaintiffs. It was brought to abate John's

---

[12]The by-laws as amended through June 29, 1981.

continued depredation of De Rance. John's reliance on *Jesse v. Four Wheel Drive Auto Co.* fails because the directors there retained counsel to defend a suit against their personal account, rather than to defend any interest of the corporation. *See Jesse* at 629, 634, 189 N.W. at 277, 278. Also, in *Kanneberg v. Evangelical Creed Congregation,* 146 Wis. 610, 131 N.W. 353 (1911), a religious corporation was required to pay attorney's fees incurred in good faith in defense of an action brought by a minority of the congregation, even though the defense ultimately failed. The supreme court stated: "A corporation has, inherently, by necessary implication, the right . . . to defend against judicial interference . . . and also authority to incur all the reasonable expense to that end, such as that for counsel and other ordinary expenses of litigation." *Id.* at 614–15, 131 N.W. at 354.

John cites no pertinent authority to establish his right to defense funds based on the doctrine of corporate neutrality. We decline to adopt John's position on the basis of the record before us.[13]

## AMENDMENT TO THE COMPLAINT

John argues that the trial court erred by granting the plaintiffs leave to file an amended complaint a month before trial. *See* Section 802.09(1), Stats.[14] The original complaint, filed October 5, 1984, focused on

[13]John cites *Solimine v. Hollander,* 129 N.J. Eq. 264, 19 A.2d 344 (N.J. Ch. 1941). It does not support his position. The New Jersey court held that a director who is a defendant in a shareholder's derivative suit is not entitled to advance payment of the costs of his defense, but once vindicated, he is entitled to reimbursement. *Id.,* 19 A.2d at 348.

[14]The amended complaint and moving papers were filed on March 14, 1986. The trial court, after argument, granted the motion on March 24. Trial date had been set for April 14.

John's activities concerning the Santa Fe television project and the treasure salvage endeavor. The amended complaint added new factual allegations.

The standard of review for an order amending pleadings is the "abuse of discretion" standard. *Leciejewski v. Sedlak,* 110 Wis. 2d 337, 350, 329 N.W.2d 233, 239 (Ct. App. 1982). In exercising its discretion, the trial court may not permit the amendment to unfairly deprive an adverse party of the opportunity to contest issues raised by the amendment. *Id.,* 110 Wis. 2d at 351, 329 N.W.2d at 240.

The trial court's findings of fact fully demonstrate its appropriate exercise of discretion. John himself, by various evasions, including failure to answer interrogatories and evasive answers at his deposition, contributed to the amended complaint's late filing. The court stated that new material alleged in the amendment was within John's knowledge and obviously did not prejudice his defense. He presented witnesses in defense against the amended complaint. Also, the court allowed John a three-week continuance at the close of the plaintiff's evidence to prepare his defense.

John does not argue that the amendment prejudiced his defense as to any particular issue. In fact, he contested all of them. The amendment sought no change in form of relief but added facts, all of which were within John's knowledge. We hold that the trial court did not abuse its discretion by granting leave to file the amended complaint.

## JURY TRIAL

John contends that his federal and state due process and equal protection rights were violated because he was not accorded a jury trial. Again, John makes no citation to authority and we decline to address this subject. *See* Sec. 809.19(1)(e), Stats.; *Racine Steel Castings,* 139 Wis. 2d at 240, 407 N.W.2d at 302.

## AMENDMENT: EQUITABLE DISGORGEMENT

John argues that the trial court erred by granting De Rance disgorgement in the sum of $1,171,097 because: (1) De Rance was never a party to the action; and (2) John's due process rights were violated in that he had no notice or opportunity to defend.

Whether De Rance was a party to this action is immaterial. John is the object of the court's judgment. Thus, the essential question is whether the trial court had jurisdiction over him. John does not dispute the court's personal jurisdiction. *See* sec. 801.05(8), Stats. The court also had subject-matter jurisdiction to order disgorgement under sec. 776.32(2), Stats.[15]

John argues that sec. 802.09(1) and (2), Stats., permitting amendments to conform to proof, requires a showing of either express or implied consent to trial of the issue, or no prejudice to the party. John asserts that

---

[15]The section provides:

**776.32 Jurisdiction.** Courts shall have jurisdiction over directors, managers, trustees and other officers of corporations:

. . ..

To order and compel payment by them to the corporation whom they represent and to its creditors of all sums of money and of the value of all property which they may have acquired to themselves or transferred to others, or may have lost or wasted by any violation of their duties as such directors, managers, trustees or other officers.

366

he did not consent to the amendment and that it was prejudicial. He also argues that De Rance could commence a new action for disgorgement, that such an action would not be barred by *res judicata* considerations, and that the trial court's concern for judicial economy is preempted by John's right to justice.

This issue was not raised by a motion to amend. The trial ended on August 21, 1986. On November 18, Gallagher and Erica John filed their proposed findings of fact. These proposed findings included their request that John pay $1,687,418 to De Rance on the theory of equitable disgorgement. When John retained new counsel, the trial court afforded him an opportunity to object to the new claim for relief. His objections were filed September 10, 1987, and a supporting brief was filed on October 10, 1987. Gallagher and Erica John filed replies to the objections and a supporting brief by November. A hearing was held November 17, 1987. The trial court filed its findings and conclusions on December 21, 1987, which, *inter alia*, determined that John had an affirmative obligation to make restitution for losses arising from his conduct, and ordered payment of $1,171,097.

John's arguments are meritless. As to the amendment of pleadings and notice, there was no amendment for which notice was required. The only post-trial change consisted of an additional form of relief. The body of the complaint remained unaltered. A prayer for relief is not a substantive part of the complaint. *Hertz Corp. v. Red Rooster Cheese Co.,* 55 Wis. 2d 701, 706, 200 N.W.2d 603, 606–07 (1972). The notice to which John was entitled is notice of facts. The complaint set forth facts that were not subject to the amendment motion. *See Wussow v. Commercial Mechanisms, Inc.,* 97 Wis. 2d 136, 146, 293 N.W.2d 897, 902 (1980) ("[I]t is

the operative facts that determine the unit to be denominated as the cause of action, not the remedy or type of damage sought.").

In any event, John was given notice of the new relief demanded. He was given an opportunity to meet it and fully utilized that opportunity. His position was thoroughly aired and considered by the trial court. His constitutional rights were honored.

John's *res judicata* argument also fails. A new trial was not required because this action had not been completed. If John believed evidence that established gross misconduct was different from that necessary to prove a right to disgorgement, or if for any valid reason John believed additional defense evidence was required to contest the new relief demanded, he could have moved the trial court to open the trial for introduction of additional evidence. John protests, but he has failed to show the trial court or this court how proof of gross misconduct fails to support an award for equitable disgorgement.

We view this as a modification of the *ad damnum* clause to grant relief not demanded in the complaint but substantiated by uncontroverted proof. John made no showing whatsoever that the undisputed evidence will not support the additional relief granted. In *Lisowski v. Chenenoff,* 37 Wis. 2d 610, 629–30, 155 N.W.2d 619, 629 (1968), the supreme court held that the trial court abused its discretion by denying a plaintiff's motion to conform the *ad damnum* clause to the undisputed proofs of damages where there was no showing of prejudice or surprise to the defendant. The burden of proof to establish prejudice rested upon the defendant. *Id.* at 637, 155 N.W.2d at 630. John has not met this burden; therefore, we conclude that the trial court did not abuse its discretion.

## SUMMARY

In brief, we have determined that:

(1) the trial court was vested with subject-matter jurisdiction by sec. 776.32(4), Stats.;

(2) John was not denied his constitutional rights to exercise religious beliefs guaranteed by the state and federal constitutions;

(3) the trial court's finding that John was guilty of gross misconduct was not contrary to the great weight and clear preponderance of the evidence;

(4) we have refused to address the following issues because John failed to comply with court rules that require citation to authority: (a) corporate authority to institute the action; (b) lack of authority by John's attorneys to enter a stipulation for an injunction; and (c) denial of John's right to a trial by jury;

(5) the trial court did not abuse its discretion in granting the plaintiffs' pretrial motion to amend the complaint;

(6) De Rance owed no duty to John to indemnify him for costs of the action, and was not obligated to remain neutral; and,

(7) the trial court did not abuse its discretion in adding, after trial, a demand for relief based on uncontroverted evidence.

*By the Court.*—Judgment affirmed.