**COURT OF APPEALS
DECISION
DATED AND FILED**

**November 8, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP2189**

STATE OF WISCONSIN

Cir. Ct. No. 2020CV448

IN COURT OF APPEALS
DISTRICT II

GLEN BAHR AND LORI L. ERSCHEN-BAHR,

    PLAINTIFFS-APPELLANTS,

  V.

AMERICAN TRANSMISSION COMPANY LLC,

    DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Winnebago County: BRYAN D. KEBERLEIN, Judge. *Affirmed.*

Before Gundrum, P.J., Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  Glen Bahr and Lori L. Erschen-Bahr appeal from an order of the circuit court granting summary judgment to American Transmission Company, LLC ("ATC") in their wrongful death and negligence action.  The Bahrs alleged that ATC's negligence in failing to mark certain transmission wires led to their son's fatal helicopter crash.  Because we conclude that the Bahrs' claims are precluded by the limitation of liability provision in the federal tariff regulating ATC, we affirm.

¶2      The tragic facts underlying the Bahrs' case are not in dispute.  The Bahrs' twenty-seven-year-old son, Jonathan Bahr, was a helicopter pilot employed by MF Helicopters, LLC.  On June 9, 2018, Jonathan was hired to fly a photographer to a boating event on the Fox River and adjacent lakes near Oshkosh, Wisconsin.  He flew with the photographer for about ninety minutes and then dropped the photographer off at a restaurant where he was to be picked up again after Johnathan refueled the helicopter.  Shortly after taking off toward the airfield for refueling, as the helicopter was crossing the Fox River, it struck and severed two wires—a shielding wire owned by ATC and a fiber-optic ground wire owned by a third party but attached to ATC's poles.[1]  The helicopter plunged into the river, and Jonathan drowned.

¶3      The Bahrs (individually and on behalf of Jonathan's estate) filed suit against ATC for wrongful death and negligence, alleging that ATC breached a duty to mark the relevant wires and that this breach caused Jonathan's death.  ATC

---

[1] The purpose of both wires was to shield three current-carrying wires from lightning strikes and to act as grounding wires.  The wires could also be used to transmit communication between electrical substations.

moved for summary judgment after the close of discovery, asserting (among other arguments) that the federal tariff under which ATC operates precludes the suit.

¶4    Pursuant to the Federal Power Act, 16 U.S.C. § 824 *et seq.*, the Federal Energy Regulatory Commission ("FERC") has exclusive authority over "'the transmission of electric energy in interstate commerce' and 'the sale of electric energy at wholesale in interstate commerce.'" *New York v. FERC*, 535 U.S. 1, 6-7 (2002) (quoting 16 U.S.C. § 824(b)).   The Midwest Independent System Operator ("MISO") is an organization authorized by FERC to control the transmission of electricity in fifteen states, including Wisconsin. *Wisconsin Pub. Power, Inc. v. FERC*, 493 F.3d 239, 245 (D.C. Cir. 2007); MISO ENERGY, https://www.misoenergy.org/about/ (last visited Oct. 12, 2023).  MISO is required to file a federal tariff with FERC subject to FERC's review and oversight. *See* 16 U.S.C. § 824d(c).  ATC is one of the transmission owners that operates under the MISO tariff.  *See* WIS. STAT. § 196.485(3m)(a) (2021-22)[2] (requiring ATC to transfer its facilities to MISO); MISO FERC Electric Tariff, Module 1.T, Definitions – T, Version 42.0.0 (effective Sept. 1, 2022) (defining "Transmission Owner(s)" as parties that transferred their transmission facilities).  The circuit court agreed with ATC that the MISO tariff precludes the Bahrs' suit and granted summary judgment on that basis.[3]  The Bahrs appeal, contending that the circuit court's interpretation of the tariff is incorrect.

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[3] The circuit court dismissed the claim as to negligence, but determined that the tariff does not preclude actions alleging gross negligence or intentional misconduct.  The Bahrs' original complaint did not include allegations of gross negligence or intentional misconduct, and despite a grant of time by the court to amend their complaint to include such allegations, they did not do so; thus, the court dismissed their case.

3

¶5     We review a circuit court's decision to grant summary judgment de novo, applying the same methodology set forth in WIS. STAT. § 802.08. *E.g.*, *Bank of N.Y. Mellon v. Klomsten*, 2018 WI App 25, ¶31, 381 Wis. 2d 218, 911 N.W.2d 364. We view the summary judgment materials in the light most favorable to the nonmoving party (in this case, the Bahrs), and we affirm a grant of summary judgment only if there are no genuine issues of fact in dispute such that judgment, as a matter of law, is appropriate. *Magnussen v. State*, 2022 WI App 23, ¶12, 402 Wis. 2d 147, 975 N.W.2d 286. Where the decision involves interpretation of a federal regulation or its equivalent, our review requires us to apply the "general principles of statutory interpretation" to discern the meaning of the regulation. *Id.*, ¶13 (quoting *Voces De La Frontera, Inc. v. Clarke*, 2017 WI 16, ¶13, 373 Wis. 2d 348, 891 N.W.2d 803); *see also State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. "This analysis presents a question of law, which we review *de novo*." *Magnussen*, 402 Wis. 2d 147, ¶13. Finally, issues concerning preemption are also questions of law for us to review independently. *Town of Delafield v. Central Transp. Kriewaldt*, 2019 WI App 35, ¶4, 388 Wis. 2d 179, 932 N.W.2d 423.

¶6     At issue in this case is the MISO tariff's limitation of liability, which states:

> The Transmission Owner shall not be liable, whether based on contract, indemnification, warranty, equity, tort, strict liability or otherwise, to any Transmission Customer, Coordination Customer, Market Participant, User, Interconnection Customer, Interconnecting Transmission Owner or any third party or other person for any damages whatsoever, including, without limitation, direct, incidental, consequential (including, without limitation, attorneys' fees and litigation costs), punitive, special, multiple, exemplary or indirect damages arising or resulting from any act or omission in any way associated with service provided under this Tariff, including, but not limited to, any act or

> omission that results in an interruption, deficiency or imperfection of service, except to the extent that the Transmission Owner is found liable for gross negligence or intentional misconduct, in which case the Transmission Owner will only be liable for direct damages. Nothing in this section, however, is intended to affect obligations otherwise provided in agreements between the Transmission Provider and Transmission Owner.

MISO FERC Electric Tariff, Module 10.3, Version 30.0.0 (effective Nov. 19, 2013) ("MISO tariff § 10.3").

¶7      The provisions of the tariff are the equivalent of federal regulations. *See California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 839, *amended by* 387 F.3d 966 (9th Cir. 2004) ("Once filed with a federal agency, [FERC] tariffs are the 'equivalent of a federal regulation.'" (quoting *Cahnmann v. Sprint Corp.*, 133 F.3d 484, 488 (7th Cir. 1998)). As such, they have the same preemptive effect as federal statutes. *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 699 (1984); *see also Gorton v. American Cyanamid Co.*, 194 Wis. 2d 203, 214-15, 533 N.W.2d 746 (1995) ("When considering the federal preemption doctrine an important benchmark is a definition of both federal and state law…. [F]ederal law is broadly defined and includes regulations made by federal agencies under their congressionally granted authority."). Under Article VI, clause 2 of the United States Constitution—the Supremacy Clause—state laws that conflict with federal laws (or regulations) are without effect; they are—in fact and as a matter of law—preempted. *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008); *Town of Delafield*, 388 Wis. 2d 179, ¶4.

¶8      The language of the tariff makes clear that it is in conflict with state law that could impose liability for the negligence alleged in this case. *See Kalal*, 271 Wis. 2d 633, ¶45 (holding that if the meaning of the language of a statute is

plain, we stop the inquiry). The tariff provides that a "Transmission Owner shall not be liable, whether based on … tort … or otherwise, to any … third party or other person for any damages whatsoever … arising or resulting from any act or omission in any way associated with service provided under this Tariff." MISO tariff § 10.3. The Bahrs do not dispute that ATC is a "Transmission Owner" subject to the tariff. *See* WIS. STAT. § 196.485(3m)(a). Nor do they suggest they are not "third part[ies] or other person[s]." Instead, they argue that the limitation of liability does not apply because ATC's "failure to mark wires under its control … has no relation to the provision of electrical services to its customers [and] does not affect the regulatory scheme enacted by FERC"—thus, according to the Bahrs, their action does not arise from something "in any way associated with the service provided under [the] Tariff." (Emphasis omitted.)

¶9      The Bahrs assert that ATC's "failure to mark wires" has nothing to do with providing electrical services to its customers, but this argument misses the point that ATC only maintains the wires at issue (negligently unmarked or not) for the purpose of providing the service of transmitting electricity to its customers. Notwithstanding the Bahrs' unsupported allegations that neither of the two specific wires that were struck by the helicopter "impacted electricity" and that they "had no relation whatsoever to the electrical transmission services provided by ATC to its customers," the uncontroverted evidence in the Record is that the purpose of these wires was to shield the current-carrying wires below them from lightning strikes, to transmit communication between electrical substations, and to provide grounding to dissipate potentially dangerous current.[4]

---

[4] An electrical outage occurred after the accident, which is further evidence that the wires struck by the helicopter were not superfluous to ATC's service of transmitting electricity.

¶10     As a matter of law, ATC's maintenance of the wires involved in the helicopter crash was "associated" with ATC's service of transmitting electricity under the tariff. The tariff's broad language limiting liability for negligence arising from acts or omissions "in any way associated" with the service provided under the tariff cannot be reasonably interpreted otherwise. ATC points to persuasive case law from outside this jurisdiction supporting this view.

¶11     In particular, in *Yorty v. PJM Interconnection, L.L.C.*, 2013 PA Super 265, 79 A.3d 655, 657-58, the appellate court of Pennsylvania held that a nearly identical limitation of liability provision in a tariff precluded a lawsuit brought by a third-party electrician who was severely injured while working on power lines. This electrician alleged that the defendant regional transmission organization ("RTO") operating under the tariff in that case was negligent in granting permission to perform the work he was doing in light of a nearby energized line of which it was aware. *Id.* The argument analogous to the one made by the Bahrs in this case would be that failing to appreciate the risk of injury had nothing to do with the electrical service the defendant was providing under the tariff, namely maintaining electrical facilities. The Pennsylvania court determined, however, that the defendant's approval of the maintenance schedule (negligently or not) was an action associated with the service provided under the tariff. *Id.* at 665. The court also noted that "the authority to limit liability in the FERC Tariffs may readily be found in Congress' directive to the FERC to set up a network of RTOs in order to supply abundant electricity with consideration for economy and conservation." *Id.* at 664. This justification for what the Bahrs characterize as an "absurd, unreasonable" result limitation on the ability of citizens to sue providers such as ATC also applies to the case before us; the limitation of

liability was a public policy decision made by Congress that is binding on this court. (Citation omitted.)

¶12 The Bahrs' cited cases are not helpful. As they acknowledge, the unpublished Michigan case of *Saunders v. Consumers Energy Co.*, 615 F.Supp.3d 707 (W.D. Mich. 2022) finding liability for negligent maintenance of power lines, did not involve any preemption argument. The cases the Bahrs cite defining terms in the context of other federal laws, such as the Airline Deregulation Act ("ADA"), are also inapposite. Even if we were to adopt the meaning of "services" set forth in these other contexts, ATC's maintenance of the wires at issue in this case would still be "in any way associated" with the service of transmitting electricity under the tariff to trigger preemption. *See, e.g.*, *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir. 1996) (defining "services" as "bargained-for or anticipated provision of labor from one party to another" in the context of ADA (citation omitted)). These cases, dealing with whether there is enough connection with federal law for federal preemption of the claims brought therein,[5] provide no support for limiting liability

---

[5] The different (and narrower) preemption provisions of the ADA and the Employee Retirement Income Security Act ("ERISA") appear to require that state law must affect the federal regulatory scheme or have a direct or significant economic effect on federally regulated activities in order to be preempted. *See New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 659, 662-63 (1995) (holding that the "indirect economic effect" of a state law requiring hospitals to collect certain surcharges did not "relate to" employee benefit plans sufficiently such that it was preempted by ERISA); *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir. 1996) (interpreting ADA's preemption provision as requiring a state law to have an "economic effect on the rates, routes, or services that the airline offers" in order to trigger preemption and holding that certain defamatory statements may not have such an effect such that state law claims based upon them may not be preempted). But there is no suggestion of this requirement in the text of the MISO tariff at issue here, and the Bahrs have pointed to no case law showing that any FERC tariff has been interpreted to require such effects for preemption.

only to "consumers" in this case rather than, as the tariff plainly states, "third parties."

¶13 We need not and do not speculate about activities a transmission owner might negligently undertake that would expose it to liability because the activity is not sufficiently associated with providing the service of transmitting electricity contemplated under the tariff, but such activities surely could exist. Thus, the phrase "in any way associated with service" is not surplusage, as the Bahrs suggest, but rather a substantive limitation. *See Kalal*, 271 Wis. 2d 633, ¶46 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage."). This case simply does not require us to determine the outer bounds of the limitation; maintaining the wires at issue in this case clearly *is* associated with ATC's provision of electrical transmission services under the tariff.

¶14 For the foregoing reasons, we conclude that the Bahrs' claim is indeed preempted by the MISO tariff. We affirm the circuit court's decision granting summary judgment to ATC on the Bahrs' claims for wrongful death and negligence and need not address ATC's other arguments.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

9